## P. H. ALBRIGHT v. J. ALBRIGHT ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF CUMBERLAND COUNTY.

Argued April 29, 1889—Decided October 7, 1889.

(*a*) A testator by his will valued his farm at $140 per acre and gave to his son Peter, then residing upon it, the option of taking it at that valuation, otherwise his executors were to sell the farm at the end of two years after testator's death. After the lapse of that period, the executors were required to make final settlement and, upon payment of bequests made, the balance due the estate was to be equally divided into five shares, one for each of testator's five sons. .

(*b*) By a subsequent clause of the will a legacy of $3,000 (changed by a codicil to $1,000) was given to a natural son of Peter, the legacy to be charged upon the farm, if accepted by Peter, and payable to the legatee, without interest, at Peter's death. If, however, Peter should not take the farm at the valuation, the legacy to the natural son was to be taken out of Peter's share of the estate and paid to the legatee on settlement of the estate by the executors.

1. Peter accepted the farm at the valuation, and upon a case stated setting forth the provisions of the will, it was determined that the legacy in favor of the natural son was charged upon the land and payable out of Peter's share of the estate, leaving their full shares to each of the other sons.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 15 January Term 1889, Sup. Ct.; court below, No. 131 May Term 1888, C. P.

On March 6, 1888, the following case stated was filed wherein Jonas Albright and John K. Beidler, executors of the will of Jacob Albright, deceased, were plaintiffs, and Peter H. Albright was defendant:

1. That Jacob Albright, late of Middlesex township, died testate in 1886, leaving to survive him as the sole legatees named in his last will and testament five sons, Peter H., Jonas, Jeremiah, Jacob and Nathan Albright; one daughter, Catharine, wife of John Stickel; two grandchildren, Jacob Ilgenfritz and William Ilgenfritz, children of Maria Ilgenfritz, a deceased daughter; Emma Albright, a daughter of Jeremiah Albright, above named, and Albert Cornman, designated in his will as Peter's son, a natural son of Peter, who is unmarried.

2. That the last will and testament of said testator is dated March 16, 1885, and the codicil September 5, 1885, both of which were duly proven, . . . . . of which the plaintiffs in this case are named as executors, who were duly qualified, and are now discharging said trust; a copy of said will and codicil are hereto attached, and made a part of this case.

3. That the testator died seised, inter alia, of a tract of land in Middlesex township on which his son Peter H. Albright then lived, containing 107 acres, and which was devised to said son, Peter H., and accepted by him under the will and codicil, at a valuation as fixed by the testator of $140 per acre. That this valuation money, to wit, $14,980 has all been paid or secured to be paid by said Peter H. Albright to the executors of decedent, except the sum of $1,000, bequeathed "to the boy Albert," which Peter H. refuses to pay, until the questions arising under the will and presented in this case stated are judicially determined.

4. Peter H. Albright was never married, and "the boy Albert" was his natural son to Mary Cornman; all the other sons and residuary legatees of the testator were married and had children at the time of the making of the will and codicil, as follows: Jeremiah, seven; Jacob, six, and Nathan, two children.

4½. That by the 3d clause of his will the said Jacob Albright provided as follows: " I give and bequeath to my grandchildren, Jacob Ilgenfritz and William Ilgenfritz, sons of my daughter, Maria Ilgenfritz, deceased, and to the boy Albert, which my son Peter had with Mary Cornman, daughter of Wm. Cornman, one thousand dollars apiece, to be paid to them respectively two years after my wife's death, . . . . ."

5. By the 4th item he directed as follows : " I value and fix the price of the farm my son Peter now lives on, at one hundred and forty dollars per acre, and I give Peter the first chance to take it at this price, and should Peter not want to take it at this price, then I give my son Jonas the next chance, and should he not want to take the farm at the price fixed, then I direct that my executors make public sale of it and sell it to the highest bidder, but this sale of it shall not be made until two years after my and my wife's death, . . . . ."

6. By the 7th item he provided thus : " I then direct that two years after my and my wife's death my executors make final settlement and pay out the bequests I made, and the balance to be equally divided into five shares, viz.: one share to Jonas, one share to Peter, one share to Jeremiah; one share to Jacob, and one share to Nathan."

7. By the 10th item he provided as follows : " And I direct in the event of my son Peter not taking the farm upon which he now lives, nor Jonas, that the farm shall be sold by my executors hereinafter named, within one year after my death, instead of two years as herein before mentioned. . . . . ."

8. By the 11th item of the will he directed: " And I direct in the event my son Peter takes said farm at fixed value, that then I bequeath the further sum of three thousand dollars to the said Albert, Peter's son to Mary Cornman, the said sum of three thousand dollars to remain to said farm and lien fixed upon it for the same, during the natural life of my son Peter, and without interest, the principal of the said three thousand dollars only to be paid out of said farm to the boy Albert, after the death of my son Peter."

9. By the 12th item he provided: " But in the event of my son Peter not taking the said farm, then I direct that the sum of three thousand dollars bequeathed to the boy Albert be taken from the share of my estate which I bequeathed to my

son Peter, viz.: out of my son Peter's share, and be paid to said Albert on settlement of my estate by my executors."

10. By the 13th item he ordered that: "Any amount of money either by note or notes or book accounts that any of my sons may be owing to me at the time of my death I direct to be deducted from the bequests made to them."

11. By the codicil he directed as follows: "I, Jacob Albright, senior, the within named testator, do hereby make and publish this codicil to be added to my last will and testament bearing date the fifth day of September, A. D. 1885, in manner following to wit: Whereas in item No. 12 that in the event of my son Peter not taking the said farm at the fixed value upon it, that then said sum of three thousand dollars I bequeathed to Peter's son Albert should be taken out of my son Peter's share of my estate and paid to the said Albert on settlement of my estate, now to wit: I direct that the said Albert is to receive only one thousand dollars out of my son Peter's share instead of three thousand dollars as mentioned in item 11. I also direct that in the event my son Peter takes said farm at the price I fixed then also I direct that the bequest I made in item 11, to said Albert of three thousand dollars, and to be a lien upon said farm as directed in item 11, I now make the bequest only one thousand dollars to said Albert and it be and remain in said farm, and paid to said Albert as I directed in item 11, that the three thousand dollars should remain and to be paid."

12. That the questions presented for the decision of the court are whether Peter A. Albright takes his whole equal share with his brothers in the farm devised to and accepted by him, and whether $1,000 devised to "the boy Albert," his natural son, and charged upon said Peter's farm, is in addition to his, Peter's, share; or, whether the intention of the testator was to deduct said $1,000 from Peter's share for the benefit of "the boy Albert" and charge said $1,000 on said farm of Peter's for the benefit of said Albert.

If the court should be of the opinion that the testator intended to take the sum of $1,000 out of the share of his son Peter H. Albright, and charge it on the farm devised to and taken by him for the benefit of his son Albert by Mary Cornman, then judgment to be entered for the plaintiffs for the sum of $1,000, otherwise judgment to be entered for the defendant.

The court, SADLER, P. J., entered judgment in favor of the plaintiffs for $1,000 and costs. The defendant thereupon took this writ, assigning the order entering said judgment as error.

Mr. S. Hepburn, Jr., for plaintiff in error.

Mr. F. E. Beltzhoover and Mr. A. B. Sharpe (with them Mr. C. P. Humrich), for defendants in error.

OPINION, MR. JUSTICE McCOLLUM:

In the seventh item of his will the testator appointed a time for the final settlement of his estate, directed his executors to pay out of it the bequests that he had made and that the balance be equally divided into five shares for his five sons, viz.: "one share to Jonas, one share to Peter, one share to Jeremiah, one share to Jacob and one share to Nathan." This balance would include the price of the farm on which his son Peter then lived. The testator valued this farm at $140 per acre, and he gave to Peter the first and to Jonas the second option to take it at that price. If neither chose to accept it at the valuation he directed that it should be sold by his executors. The bequests referred to were $1,000 each to Jacob and William Ilgenfritz and "the boy Albert," and $600 to Emma Albright. These were all the bequests then made to be paid by his executors before division.

Items 11 and 12 relate to another legacy to the boy Albert and provide for its payment. They are so connected that they must be considered together in ascertaining the intention of the testator. They give to Albert a legacy of $3,000 and charge it upon the farm if Peter takes it "at the fixed value," to be paid without interest " out of the farm " at his death; but if he does not take the farm, to be paid by the executors out of his share of the estate on final settlement. It will be observed that this legacy is but four dollars in excess of Peter's share in the farm, and was probably in the mind of the testator the equivalent of it. Peter having taken the farm, the question raised is whether the legacy is payable out of the undivided estate or out of his share of it.

In support of the construction which casts the burden of this legacy upon the undivided estate, it is assumed that the testator preferred that Peter should take the farm, and that to enforce

this preference he deprived him of all interest in it as a penalty for refusing it at the valuation, and, as a reward for compliance with his desire in this particular, he bequeathed one fifth the price of it to Albert subject to a life estate in Peter, and limited his other sons to an equal participation with Peter in the remaining four fifths of it. We cannot assent to this view of the case. A sufficient reason for the option that was given Peter to take the farm at the testator's price, is found in the fact that he was living upon it. It is true that his acceptance of it postponed the payment of the legacy during his life, and this was of advantage to him, but not at the expense of his brothers. Their shares in the estate were previously created and defined in item 7, and subsequently recognized in the 13th item, where the testator says, "any amounts of money either by note or notes or book account that any of my sons may be owing to me at the time of my death I direct to be deducted from the bequests I made them." Items 11 and 12 relate to the same legacy and differ only in the time appointed for its payment. It is distinctly charged upon Peter's property; upon his farm, in one contingency, and upon his share of the estate in the hands of the executors, in another. This construction is sustained by the language of the testator and by his previous disposition of his estate. It accords with natural justice and saves to his other sons unimpaired the shares that he gave them.

The judgment is affirmed.